# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOSE VILLANUEVA, MIGUEL VILLANUEVA, GLORIA BERNAL, ROSALBA ESCOBAR, LUIS BARBOSA, EBER CORREA, and LUZ VERONICA CORREA, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> DAVIS BANCORP, INC., <br><br> Defendant. | No. 09 CV 7826 <br><br> Judge Joan H. Lefkow |

## OPINION AND ORDER

Plaintiffs, Jose Villanueva, Miguel Villanueva, Gloria Bernal, Rosalba Escobar, Luis Barbosa, Eber Correa, and Luz Veronica Correa, filed this putative class/collective action against Davis Bancorp, Inc. for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. § 105/1 *et seq.* Before the court is plaintiffs' motion for class certification of their IMWL claims. For the following reasons, the motion [#24] is granted.[1]

## BACKGROUND

Davis is an Illinois corporation that transports bank checks on behalf of clients. Plaintiffs are former courier delivery drivers who were contracted with Davis to pick up and drop off financial records at banking centers in the Chicago area. Plaintiffs allege that Davis has a policy

---

[1] The court's jurisdiction of the FLSA claims rests on 29 U.S.C. § 216(b) and of the IMWL claim on 28 U.S.C. § 1367.

of denying overtime pay to its employees in violation of the IMWL.

I.      The *Rodriguez* Litigation

This is the second case filed by Davis's courier drivers alleging violations of the IMWL and the FLSA. On January 21, 2009, Luis Enrique Rodriguez filed a putative class action in this district alleging claims nearly identical to those alleged here.[2] *See* Dkt. #1, *Rodriguez* v. *Davis Bancorp, Inc.*, Case No. 09-C-372 (hereinafter "*Rodriguez*"). Before a motion for class certification had been filed, the parties engaged in settlement negotiations before Magistrate Judge Keys. They agreed to resolve the matter as a collective action under the FLSA rather than as a class action under the IMWL. Davis identified thirty-six courier delivery drivers who had worked for it during the relevant time period and mailed an opt-in notice to each of these individuals as required by 29 U.S.C. § 216(b). J.R. Davis Decl. ¶ 5 & Ex. A. Nine drivers consented to participate in the *Rodriguez* settlement.

On December 8, 2009, Judge Keys entered orders approving the parties' settlement agreement and dismissing the *Rodriguez* case with prejudice. Dkt. #33, #34 in *Rodriguez.* The settlement agreement provides that Davis shall have "no duty under this General Agreement to make any payment or provide other consideration to any individual who fails to 'opt in,' with the exception of [Rodriguez], who need only execute and return his Individual Agreement and Release to receive payment from Davis." Dkt. #31-2, ¶ 2 in *Rodriguez*. Each courier driver who participated in the *Rodriguez* settlement executed an Individual Settlement and Release that provides:

> **Release of Wage Claims and Attorneys' Fees**.  Employee knowingly and voluntarily releases and forever discharges Employer . . . from any and all claims

---

[2] Rodriguez asserted a claim for unjust enrichment that has not been asserted by the plaintiffs in this case.

> which Employee has or may have against [Employer] for unpaid overtime wages
> (including any liquidated damages related to those wages) as of the date of
> execution of this General Agreement, for any alleged violation of the Fair Labor
> Standards Act or the Illinois Minimum Wage Law that were asserted under any
> and all federal state or local law and for any unjust enrichment claims relating to
> any operating expenses of the vehicle used by Employee.

Dkt. #31-2, Ex. A in *Rodriguez*. The settlement agreement contains an identical provision. Dkt. #31-2, ¶ 5 in *Rodriguez*. Davis agreed to pay up to $165,000.000 to settle the nine drivers' claims.

## II. The *Villanueva* Litigation

At some point after the *Rodriguez* settlement, Davis determined that the names of several drivers had not been disclosed to the *Rodriguez* plaintiffs. Davis now estimates that it employed 159 drivers during the relevant time period. J.R. Davis Decl. ¶ 3. Thus, Davis failed to provide opt-in notice to 123 potential participants in the *Rodriguez* settlement.

Plaintiffs filed their complaint in this case on December 16, 2009, alleging claims on behalf of those individuals who did not participate in the *Rodriguez* settlement. Plaintiffs seek to certify the following IMWL overtime wage class:

> All persons employed by Defendant in the job position of courier driver since
> January 21, 2006, through and including the present, who have not been paid
> overtime for all time worked in excess of forty (40) hours in individual work
> weeks, and who did not sign a release of their claims as part of the settlement in
> the matter of *Rodriguez v. Davis Bancorp*, No. 09 C 0372 (N.D. Ill.).

The statute of limitations for a claim brought under the IMWL is three years. *See* 820 Ill. Comp. Stat. § 105/12(a). Plaintiffs assert that the statute of limitations was tolled between January 21, 2009, when the *Rodriguez* litigation commenced, and December 16, 2009, when the complaint in this case was filed.

**LEGAL STANDARD**

A party seeking to certify a class action must meet two conditions. First, the movant must show the putative class satisfies the four prerequisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a); *Oshana* v. *Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *Rosario* v. *Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). Second, the action must qualify under at least one of the three subsections of Rule 23(b). Fed. R. Civ. P. 23(b); *Rosario*, 963 F.2d at 1017; *Hardin* v. *Harshbarger*, 814 F. Supp. 703, 706 (N.D. Ill. 1993). Here, plaintiffs seek certification under Rule 23(b)(3), which requires a finding that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Courts retain broad discretion in determining whether a proposed class meets the Rule 23 certification requirements. *Keele* v. *Wexler*, 149 F.3d 589, 592 (7th Cir. 1998). While the requirements of Rule 23 should be liberally construed to support the policy favoring the maintenance of class actions, *King* v. *Kansas City S. Indus.*, 519 F.2d 20, 25–26 (7th Cir. 1975), the moving party bears the burden of showing that the requirements for class certification have been met. *Hardin*, 814 F. Supp. at 706.

**DISCUSSION**

Davis does not argue that plaintiffs have failed to satisfy any of the four requirements of Rule 23(a), and therefore plaintiffs have satisfied their burden with respect to these requirements. *See Vaughn* v. *King*, 167 F.3d 347, 354 (7th Cir. 1999) ("It is not the responsibility of [the] court to make arguments for the parties."). Davis vigorously disputes that plaintiffs' proposed class

satisfies Rule 23(b)(3)'s "superiority" requirement, however. Davis also argues that the statute of limitations for plaintiffs' claims should not be tolled.

**I.      Rule 23(b)(3)'s "Superiority" Requirement**

Rule 23(b)(3) provides that a class can be maintained if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In considering the satisfaction of the superiority requirement, the court will look at "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b).

Davis first argues that the superiority requirement is not satisfied because there is an inherent conflict between an "opt-in" collective action under the FLSA and an "opt-out" class action under the IMWL. This argument was recently rejected by the Seventh Circuit in *Ervin* v. *OS Restaurant Services, Inc.*, 632 F.3d 971 (7th Cir. 2011), which also considered claims brought under the FLSA and the IMWL. As the court of appeals explained, "there is no categorical rule against certifying a Rule 23(b)(3) state-law class action in a proceeding that also includes a collective action brought under the FLSA." *Id.* at 973–74. "In combined actions, the question whether a class should be certified under Rule 23(b)(3) will turn – as it always does – on the application of the criteria set forth in the rule." *Id.* at 974.

In this case, the factors favor the use of a class action to adjudicate the IMWL claims. The court is not aware of any pending suits brought by individual class members. This suggests

that members of the class do not have strong incentive to individually control the prosecution of their cases. Concentrating separate actions based on the same underlying conduct in one action promotes judicial economy and efficiency and consistency of judgments. Davis argues that it will be difficult to manage a IMWL class action in the event that a collective action is also certified under section 216(b) because potential group members will be confused by the various opt-in and opt-out notices. This problem can be solved by the use of adequate notice procedures, however. *Id.* at 978 (citing *O'Brien* v. *Encotech Const. Servs., Inc.*, 203 F.R.D. 346, 352 (N.D. Ill. 2001); *Ladegaard* v. *Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2000 WL 1774091, at *7 (N.D. Ill. Dec. 1, 2000)). Moreover, the risk of confusing potential class members might increase if the IMWL action and the FLSA action were to proceed separately. *Id.* Davis also asserts that it will be prohibitively difficult to manage the class because the members' status as "employees" may not be the same under both the IMWL and the FLSA, depending on whether the motor carrier exemption applies under Illinois law, and because the court will have to calculate damages differently under the two statutes. These issues are not complicated and would arise whether or not plaintiffs' claims under the IMWL proceed individually or as a class action. They do not present a compelling reason to deny class certification. Therefore, although some difficulties may be encountered in managing the class action, the class is relatively small, and the court is confident that the parties can devise solutions to address the issues that arise and ensure that the adjudication of the case is both fair and efficient.

Davis also argues that because the IMWL class may have more members than the FLSA collective action, state law issues predominate and the court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a). The Seventh Circuit addressed and rejected this argument in *Ervin* as well. *See id.* at 979–81. In deciding whether the exercise of

supplemental jurisdiction is appropriate, the court looks to the type of the claim asserted under the federal and state laws rather than the number of parties involved. *Id.* at 980. Because plaintiffs' IMWL claims "essentially replicate the FLSA claims–they plainly do not predominate." *Id.* at 980 (quoting *Lindsay* v. *Gov't Emps. Ins. Co.*, 448 F.3d 416, 425 (D.C. Cir. 2006)). Therefore the court need not decline to exercise supplemental jurisdiction if it certifies plaintiffs' proposed class. *Id.* at 981 ("In all but the most unusual cases, there will be little cause for concern about fairness or comity."). Therefore plaintiffs' class satisfies the requirements of Rule 23(a) and Rule 23(b)(3).

## II. Statute of Limitations

Plaintiffs argue that the three-year statute of limitations was tolled during the pendency of the *Rodriguez* litigation under *American Pipe & Construction Company* v. *Utah*, 414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974), and the doctrine of equitable tolling.

In *American Pipe* the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. at 554. Subsequently, in *Crown, Cork & Seal Co., Inc.* v. *Parker*, 462 U.S. 345, 103 S. Ct. 2392, 76 L. Ed. 2d 628 (1983), the Court held that it does not matter whether the member of the putative class intervenes in the original action or files an independent suit. The Illinois Supreme Court has adopted the tolling rules set forth in *American Pipe* and *Crown, Cork*. *See Portwood* v. *Ford Motor Co.*, 701 N.E.2d 1102, 1103, 183 Ill. 2d 459, 233 Ill. Dec. 828 (1998); *Steinberg* v. *Chicago Med. School,* 371 N.E.2d 634, 645, 69 Ill. 2d 320, 13 Ill. Dec. 699 (1977).[3] Illinois

---

[3] The court applies Illinois tolling rules as required by the *Erie* doctrine. *See Bd. of Regents* v. *Tomanio*, 446 U.S. 478, 485, 100 S. Ct. 1790, 64 L. Ed. 2d 440 (1980).

courts also apply class action tolling to jurisdictional limitation periods created by statute. *Hess v. I.R.E. Real Estate Income Fund, Ltd.*, 629 N.E.2d 520, 531, 255 Ill. App. 3d 790, 195 Ill. Dec. 935 (1993).

*American Pipe* and *Crown, Cork* do not address whether the statute of limitations should be tolled if the second case to proceed is, like the first case, a class action. Nor is the court aware of any Illinois case that addresses this issue. The Seventh Circuit, however, recently confirmed that the statute of limitations may be tolled in these circumstances. *Sawyer* v. *Atlas Heating & Sheet Metal Works, Inc.*, — F.3d —, 2011 WL 2039663, at *3 (7th Cir. May 26, 2011). According to the court's reasoning in *Sawyer*, the statute of limitations may be tolled so long as issues decided during the course of the first class action lawsuit do not preclude certification of a second class because of collateral estoppel. *Id.* at *4. Furthermore, the rationale for class action tolling does not depend on whether the first class action was resolved before or after a class was certified. *Id.* at *3. "Tolling lasts from the day a class claim is asserted until the day the suit is conclusively not a class action – which may be because the judge rules adversely to the plaintiff, or because the plaintiff reads the handwriting on the wall and decides not to throw good money after bad." *Id.* The court is persuaded that the Seventh Circuit's reasoning is consistent with *American Pipe* and the Illinois courts' adoption of class action tolling.

The *Rodriguez* class action was filed on January 21, 2009 and asserted claims under the IMWL that are identical to those asserted here. The docket in that case reflects that claims were settled before the plaintiffs filed a motion for certification of an IMWL class. Therefore no issue that is relevant to the court's certification of plaintiffs' class was decided in the *Rodriguez* action. *See Sawyer*, 2011 WL 2039663, at *5 ("Issue preclusion applies only to subjects actually

and necessarily decided in the earlier suit."). Under *American Pipe* and *Crown, Cork*, the statute of limitations for plaintiffs' IMWL claim was tolled from January 21, 2009 until December 8, 2009, when Judge Keys entered an order approving the parties' settlement agreement.[4]

Davis argues that the court cannot apply class action tolling to plaintiffs' IMWL claims because Illinois courts do not allow "cross-jurisdictional tolling." *See Portwood* v. *Ford Motor Co.*, 701 N.E.2d 1102, 1104–05, 183 Ill. 2d 459, 233 Ill. Dec. 828 (1998). The sequence in this case is not cross-jurisdictional, however, as the *Rodriguez* case and this case were both filed in the same federal district. In *Portwood*, the plaintiffs had previously filed class actions in the District Court for the District of Columbia, and the Illinois trial court had declined to toll the statute of limitations for the pendency of the suit in federal court. It is clear from the Illinois Supreme Court's opinion that term "cross-jurisdictional" refers to situations where the same claims have been filed in different forums. Indeed, the court declined to apply cross-jurisdictional tolling primarily out of a concern for forum-shopping. It concluded that unless every state were to allow cross-jurisdictional tolling, plaintiffs who fail to certify a class in federal court will file a disproportionate number of cases in Illinois. *Id.* at 1104–05. The policy concerns articulated in *Portwood* are not implicated here. On the other hand, the goals of *American Pipe* and *Crown, Cork* are furthered by allowing class action tolling in this case. *See In re Copper Antitrust Litig.*, 436 F.3d 782, 794 (7th Cir. 2006) ("The essential rationale of *American Pipe* is that members of a class whose claims are embodied in a class action should not be required by the exigencies of the statute of limitations to clutter the courts with duplicative

---

[4] Plaintiffs request that the court toll the statute of limitations until December 16, 2009, when the complaint in this case was filed. Plaintiffs have not explained why class action tolling should extend past the end of the *Rodriguez* case. Therefore the court will only toll the statute of limitations until December 8, 2009.

lawsuits so long as their claims are encompassed by the class action."). Moreover, in *Portwood* the court confirmed that "[t]olling the statute of limitations for individual actions filed after the dismissal of a class action is sound policy when both actions are brought in the same court system." *Id.* at 1104. Accordingly, the statute of limitations for plaintiffs' IMWL claims will be tolled for 321 days. *See Walker* v. *Sheriff of Cook Cnty.*, No. 08 C 1866, 2009 WL 803783, at *3 (N.D. Ill. Mar. 27, 2009) (tolling plaintiff's claims under 42 U.S.C. § 1983 because of the filing of a related class action lawsuit in this district); *but see Ottaviano* v. *Home Depot, Inc., USA*, 701 F. Supp. 2d 1005, 1012–13 (N.D. Ill. 2010) ("Under *Portwood*, the filing of the *Griffin* and *Aquilino* state law class actions in federal court had no effect on the running of the limitations period for Plaintiffs' state law claims."). Plaintiffs' proposed class will include courier drivers employed by Davis from January 26, 2006 to the present.[5]

### III. Whether Plaintiffs' Claims Were Released As Part of the *Rodriguez* Settlement

Plaintiffs' class contains two groups of courier drivers: (1) drivers who were not identified in *Rodriguez*, and (2) drivers who were identified in *Rodriguez* but failed to opt-in to the FLSA collective action. Davis argues that the court should not toll the statute of limitations

---

[5] Because class action tolling is appropriate under *American Pipe* and *Crown, Cork*, the court does not decide whether equitable tolling also applies. Indeed, it is unclear whether equitable tolling could toll the statute of limitations under the IMWL. *See Hess*, 629 N.E.2d at 531 ("Although there is authority in Illinois for the proposition that a jurisdictional limitation is not subject to *equitable* tolling . . . we believe that there is a fundamental distinction between equitable tolling and class action tolling."); *see also Fid. Nat'l Title Ins. Co. of New York* v. *Howard Sav. Bank*, 436 F.3d 836, 839 (7th Cir. 2006) (it is unclear whether Illinois courts recognize the doctrine of "equitable tolling" as it is applied by federal courts). In contrast to class action tolling, which is used to promote judicial efficiency and preserve the rights of absent class members, Illinois courts use equitable tolling to "excuse untimely filing by an individual plaintiff . . . where the plaintiff has been induced or tricked by the defendant's conduct into allowing the filing deadline to pass." *Id.*; *see also Hollander* v. *Brown*, 457 F.3d 688, 694 n.3 (7th Cir. 2006) (describing the difference between "equitable tolling" as applied by Illinois courts and courts in this district and noting that Illinois courts often use the terms "equitable tolling" and "equitable estoppel" interchangeably). Plaintiffs do not assert that they were actively misled by Davis or that Davis prevented them from filing suit in a timely manner. *See Clay* v. *Kuhl*, 727 N.E.2d 217, 223, 189 Ill. 2d 603, 244 Ill. Dec. 918 (2000). For these reasons, it is unlikely that equitable tolling would be proper in this case.

for drivers who were not identified in *Rodriguez* because class certification was never requested in *Rodriguez*. This line of reasoning is not supported by *American Pipe* or *Crown, Cork*. *See Sawyer*, 2011 WL 2039663, at *2 ("The Court's goal of enabling members of a putative class to rely on a pending action to protect their interests can be achieved only if the way in which the first suit ends – denial of class certification by the judge, abandonment by the plaintiff, or any other fashion – is irrelevant."). The court will toll the statute of limitations for the drivers whom Davis previously failed to identify.

The court will also toll the statute of limitations for those drivers who did not opt-in to the *Rodriguez* collective action. The *Rodriguez* settlement agreement does not release claims on behalf of drivers who did not sign an individual release agreement. Davis argues that the parties agreed that it would not provide any "payment or . . . other consideration" to drivers who failed to opt-in to the collective action, however this provision only applies to Davis's obligations "under [the settlement agreement]." While Davis is correct that drivers who failed to opt-in cannot claim a portion of the amounts paid under the settlement agreement, they are not barred from bringing individual or class claims under the IMWL.

**CONCLUSION AND ORDER**

Because plaintiffs have satisfied the necessary elements of Rule 23(a) and Rule 23(b)(3), the court grants plaintiffs' motion for class certification [#24]. The class is defined as: "All persons employed by Davis Bancorp, Inc. in the job position of courier driver since January 29, 2006, through and including the present, who have not been paid overtime for all time worked in excess of forty (40) hours in individual work weeks, and who did not sign a release of their

claims as part of the settlement in the matter of *Rodriguez v. Davis Bancorp*, No. 09 C 0372 (N.D. Ill.)." Miguel Villanueva and Rosalba Escobar are appointed as class representatives for the class. Douglas Werman and Davis Stevens are appointed class counsel.

Dated: July 8, 2011　　　　　　　　　Enter: _____
　　　　　　　　　　　　　　　　　　　　　　JOAN HUMPHREY LEFKOW
　　　　　　　　　　　　　　　　　　　　　　United States District Judge